UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PHYLICIA DAWN SCOTT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17CV139-PPS |
| | ) | |
| MONTEREY FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In her complaint, plaintiff Phylicia Dawn Scott alleges that defendant Monterey Financial Services, a debt collector, has "systematically and habitually" over a period of years harassed Scott with calls to her cell phone about a debt that Scott has disputed as fraudulently incurred with a "compromised credit card" at a "beauty products store." [DE 1 at ¶¶18, 19, 20, 25.] As the litigation has developed, her story has shifted a bit. Her card was not compromised. Indeed, she no longer disputes that she placed an online order for an airbrush cosmetics system from Luminess Direct, LLC on March 30, 2014, thereby incurring the debt that defendant Monterey later attempted to collect. [DE 17 at 2.] The Customer Statement of Luminess reflects (without dispute) that Scott's purchase was to be paid for on an installment plan requiring payments every 4 weeks, on which Scott defaulted. [DE 16-1 at 4.]

Scott brings claims on three legal theories. Count I alleges that Monterey's conduct violated the Fair Debt Collection Practices Act. Count II alleges violations of the Telephone Consumer Protection Act. Count III is brought under the Indiana

Deceptive Consumer Sales Act. The case is before me now on Monterey's motion for summary judgment and motion for sanctions. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## Count I – Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act is a federal law intended to protect consumers from "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. §1692(a). The Act prohibits a number of specific practices in the process of debt collection. In Count I of her complaint, Scott alleges that Monterey committed a number of violations of the FDCPA by the manner in which it harassed her with telephone calls in an effort to collect the Luminess debt.

The FDCPA has a one-year statute of limitations: "[a]n action to enforce any liability created by this subchapter may be brought...within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d). *See also Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 865 (7th Cir. 2016). Monterey argues that it is entitled to summary

2

judgment on the FDCPA claim because "the overwhelming majority" of the telephone calls Scott's claim is based on occurred outside the one-year statute of limitations for such a claim, and the few that were within the limitations period are not sufficient to support a claim under the FDCPA. [DE 17 at 1-2.]

Scott filed this case on February 16, 2017. In its Statement of Material Facts, Monterey contends that "MFS and/or its representatives only spoke to plaintiff once on December 18, 2014." [DE 17 at 2.] In isolation, this sentence is ambiguous. It could mean that Monterey's only conversation with Scott took place on that date. But it could also mean there was one conversation on December 18 but additional conversations on other dates. Monterey clarifies its meaning by shortly thereafter asserting that there is no record "that MFS spoke to Plaintiff at any time other than during the December 18, 2014 telephone call," and that "[n]o such record exists because MFS only spoke with Plaintiff on a single occasion." [*Id*. at 2-3.]

Monterey goes on to assert that it "only made five telephone calls to the Plaintiff in the preceding year." [*Id*. at 3.] This too requires some interpretation, but the argument Monterey ultimately makes about the statute of limitations clarifies that this is a claim that, within the one year period *preceding the filing of Scott's lawsuit*, Monterey attempted five calls to Scott, but without reaching her for a live conversation. For these factual assertions about its telephone activity, Monterey relies on its "Print Account Ledger" associated with Scott's account, which includes 7 pages of a chronological log

3

reflecting some 63 phone calls to Scott, all but one of which are described as "Recorded Message" or "Customer Hung Up." [DE 19-2 at 7-14.]

Scott attempts to cast doubt on the reliability of Monterey's records of the call history by presenting evidence of the omission of a call to Scott on October 21, 2015.[1] [DE 27 at 2; DE 27-3 at 166.] Scrambling to recover from this error, Monterey tells me that the call was "accidentally deleted due to a technical issue" and hopes to demonstrate that it was the only possible such error. [DE 28-1 at 1-2, 4.] To that end, Monterey has filed 1382 pages of records subpoenaed from T-Mobile, itemizing phone calls to and from Scott's phone from August 29, 2015 to June 6, 2017. [DE 27-3.] Monterey claims to have conducted a comparison between its call records and Scott's T-Mobile records to confirm that the October 21, 2015 call was the only one missing from Monterey's internal records for Scott's account. [DE 28-1 at 2.] But the subpoena to T-Mobile sought phone records beginning December 1, 2013, so why do the T-Mobile records Monterey filed with the court date only from August 29, 2015? [DE 27-2 at 6.] Because of that limitation of the T-Mobile records, the summary comparison Monterey has submitted omits the December 18, 2014 call (the other recorded conversation that has been provided to the court), as well as 34 other telephone calls Monterey's records indicate it placed to Scott prior to August 29, 2015. [*Id.* at 4.]

---

[1] The recording of this call indicates that Scott hung up after an automated message identified the caller as Monterey. [DE 29.]

These discrepancies provide some basis for doubting the conclusiveness of Monterey's assertions about its call history with Scott. But even more significant than questions about the number and date of calls is Scott's dispute about the nature and content of her conversations with Monterey. Monterey asserts that, of the more than 60 phone calls reflected in its account ledger, the only actual conversation with Scott occurred on December 18, 2014, the first time such a call was attempted. [DE 16-2 at 1.] But there is evidence to the contrary: Scott's affidavit (filed with her complaint) contains representations that, if true, indicate that there were other conversations between the parties. Scott has attested: "I have told Monterey that I was disputing the debt and to stop contacting me on at least three occasions." [DE 1-1 at ¶10.] Scott's affidavit also claims that "Monterey's representatives have threatened me a number of times with statements like, 'You can go to jail,' 'Charges will be pressed,' and 'We will come to your house.'" [*Id*. at ¶13.] Together, these sworn statements and the discrepancies in Monterey's accounting of its phone calls to Scott create material disputes of fact concerning the number and timing of Monterey's calls to Scott as well as the conduct of Monterey's representatives during those calls.

Further, Monterey's own records describe more than 20 calls with the summary notation "Customer Hung Up." In and of itself, this description, even if accurate, does not preclude a scenario in which a conversation occurred but was ultimately terminated by Scott hanging up. The statements Scott attests to could therefore have occurred during any of those calls. The parties have not addressed whether any evidence reflects

the duration of any of the calls placed to Scott, and whether the time was sufficient for Monterey's representatives to make the statements Scott alleges, either to her before she hung up, or left as recorded messages. Furthermore, Monterey's assertions about its calls to Scott appear to be premised on Monterey's use of a single phone number, (760) 639-3500. But Scott has attested in her affidavit that she "believe[s] [Monterey] has used other numbers as well." [DE 1-1 at ¶2.] Monterey's evidence and argument do not address or preclude the possibility that Monterey representatives called Scott from other phone numbers.

Monterey relies on the declaration of its Executive Vice President Shaun Lucas to support its claim that there was only a single conversation, the one that occurred on December 18, 2014. [DE 16-2 at ¶5.] The audio recording of that conversation demonstrates that it did not include any statements of the kind Scott attests to. [DE 21.] Lucas represents that all its telephone calls are recorded and that there is no recording of Scott having instructed Monterey to stop calling her. [DE 16-2 at ¶¶6, 7.] What Lucas does <u>not</u> attest to is that he (or anyone else) actually reviewed the recordings of all 63 of Monterey's calls to Scott to determine the facts he asserts about the calls. Given Scott's specific attestations about additional conversations, this gap in the basis of knowledge for Lucas's representations becomes more significant. Even if Lucas's declaration is taken at face value, however, it is in effect disputed by Scott's affidavit.

The December 18, 2014 conversation was more than two years before Scott filed this suit, and therefore well outside the one-year statute of limitations. Are the only

conversations that "count" for the FDCPA claim conversations that took place within the year prior to Scott's filing on February 16, 2017? If so, for purposes of summary judgment, do I consider those only to be the five such calls listed in Monterey's printout of Scott's account? [DE 19-2 at 13.] Or is there sufficient doubt about that record's accuracy, or about the conversations those calls involved, to constitute a genuine dispute?

Concerning the statute of limitations issue, Scott claims the benefit of what is called the "continuing violation" doctrine, which can stretch a claim to include conduct that preceded the statute of limitations. The only opinion of our Court of Appeals addressing whether the continuing violation doctrine applies to claims under the FDCPA is *Gajewski v. Ocwen Loan Servicing*, 650 Fed.Appx. 283 (7th Cir. 2016). In *Gajewski*, the Seventh Circuit rejected the plaintiffs' "thinking that new violations will resurrect prior, untimely claims based on a 'continuing violation' theory." *Id*. at 286. Instead, the Court of Appeals treated individual violations of the FDCPA as the type of "discrete acts, each of which is independently actionable," to which the continuing violation doctrine does not apply, "even if those acts form an overall pattern of wrongdoing." *Id*. (quoting *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) and *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005)).[2] The Seventh

---

[2] In her brief, Scott quotes this language and then promptly ignores it, asserting inexplicably the opposite -- that FDCPA violations constitute cumulative acts rather than discrete independent acts. [DE 27 at 5.] For this proposition she cites a California district court opinion, claiming that it "recogniz[es] that the continuing violation doctrine applies to claims of telephone harassment under the FDCPA." [*Id*.] To the

7

Circuit concluded that "any wrongful collection activity that occurred before November 2013 – a year before the Gajewskis brought this federal action – is barred by the one-year statute of limitations." *Gajewski*, 650 Fed.Appx. at 286. As applicable here, this means that Scott's FDCPA claim needs to be supported by Monterey's conduct after February 16, 2016.

Monterey's activity log for Scott's account shows only five phone calls after February 16, 2016, four with the description "Recorded Message" and the fifth described as "Customer Hung Up." [DE 19-2 at 13.] But as I previously concluded, there exist disputes of fact concerning the accuracy and comprehensiveness of this information, and concerning what was said by the parties in conversations concerning Scott's debt. Given those disputes, I cannot determine as a matter of law whether Monterey's conduct in attempting to recover the debt violated the various FDCPA proscriptions Scott invokes in her pleading of Count I. Even though I agree with Monterey that Scott's FDCPA claim is limited to conduct beginning one year before this suit was filed, Monterey's summary judgment argument depends largely on a finding as a matter of law that only five phone calls were attempted after that date and that there were no conversations between the parties during that time. On the record before

---

contrary, *Joseph v. J.J. MacIntyre Companies, LLC*, 238 F.Supp.2d 1158 (N.D. Cal. 2002), does not even mention the continuing violation doctrine and reports that the parties to that litigation agreed that the statute of limitations did not bar the FDCPA claim. *Id*. at 1161.

me, I cannot make those findings as a matter of law, for the reasons I've explained. Summary judgment must be denied on Count I.

### Count II – Telephone Consumer Protection Act

The Telephone Consumer Protection Act prohibits robocalls – calls "using any automatic telephone dialing system or an artificial or prerecorded voice" – to cell phones without the prior consent of the recipient. 47 U.S.C. §227(b)(1)(A)(iii). The TCPA claim in Count II is defeated, Monterey contends, because Scott expressly consented to receiving the telephone calls now complained of when Scott provided her telephone number to the original creditor when she made the online purchase. [DE 17 at 2.]

Scott resists this argument, contending that "[a]lthough consumers can consent to being contacted simply by providing their cellular phone number to a party, courts have found that such consent to be contacted does not extend beyond the original party to whom consent was provided absent a clear provision in the consent-inducing document to the contrary." [DE 27 at 16-17.] For this, Scott cites a Ninth Circuit case, *Satterfield v. Simon and Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). *Satterfield* involved a plaintiff who provided her cell phone number to one company in order to get a free ringtone, but then received a text message from a separate company promoting an entirely different product. The legal issue was the scope of language consenting to the receipt of "promotional material" from a named party or its "affiliates or brands." The analysis in *Satterfield* doesn't help me address whether the TCPA exempts calls by a

9

debt collector when the debtor had provided the underlying creditor with consent. *Id*. In any event, subsequent to the events underlying *Satterfield*, the Federal Communications Commission has offered interpretations of the TCPA acknowledging forms of implied consent that support Monterey's argument here.

In a 2008 Ruling, the FCC "clarif[ied] that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008). The FCC also explained that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and [if] such number was provided during the transaction that resulted in the debt owed." *Id*. at 564-65. Scott does not dispute that this accurately describes her situation vis-à-vis Luminess and the order of the airbrush cosmetics system. [DE 16-1 at 4.] The FCC's 2008 Ruling also provides the next and final step in Scott's consent to Monterey's use of her cell phone number: "the 2008 Ruling holds that calls placed by a debt collector…on behalf of a creditor…'are treated as if the creditor itself placed the call.'" *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016), quoting the 2008 Ruling, 23 FCC Rcd. at 565.

The FCC's interpretation has been applied to reverse a summary judgment erroneously granted against a debt collector, where the plaintiff-debtor had provided her phone number in connection with the debt transaction. In *Mais v. Gulf Coast*

10

*Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014), the Eleventh Circuit held that the FCC's 2008 Ruling entitled the debt collector to judgment as a matter of law on the plaintiff's TCPA claim because his provision of his cell number to the creditor constituted prior express consent "'to be contacted at that number regarding the debt.'" *Id*. quoting 23 FCC Rcd. at 564. *Baisden* is a more recent example of the same interpretation. There, citing *Mais*, the Sixth Circuit affirmed the grant of summary judgment on a TCPA claim to a debt collector that placed calls to consumers' cell phone numbers using automatic dialing systems and automated voice technology after the consumers had provided their cell phone numbers in connection with incurring a debt. 813 F.3d at 346.

As a matter of law, I conclude that Monterey's initial use of Scott's cell phone number to attempt collection for the Luminess debt was with Scott's consent and did not violate the TCPA. But in opposition to summary judgment, Scott also argues that she has created a genuine dispute about whether that initial consent was later revoked, by attesting in her affidavit that she "told Monterey that [she] was disputing the debt and to stop contacting [her] on at least three occasions." [DE 1-1 at ¶10.] The FCC has made clear that for purposes of the TCPA, consent can be revoked "at any time and through any reasonable means." *In re Rules & Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7989-90, ¶47 (2015). *See also Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). For the reasons explained above with respect to Scott's FDCPA claim, Monterey's attempt to establish conclusively that there was only a single particular

telephone conversation between Scott and Monterey representatives has not succeeded. Given the factual dispute concerning the number and content of communications between the parties, which includes a dispute as to whether Scott revoked her earlier consent to be called on her cell phone concerning the Luminess debt, Scott defeats Monterey's motion for summary judgment on her claim under the TCPA.

## Count III – Indiana Deceptive Consumer Sales Act

The Indiana Deceptive Consumer Sales Act prohibits a "supplier" from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."  Ind. Code §24-5-0.5-3(a).  "Supplier" and "consumer transaction" are defined to include debt collectors and debt collection.  *Id*. at §24-5-0.5-2.  The statutory list of prohibited acts expressly includes violations of the federal TCPA and FDCPA.  *Id*. at §24-5-0.5-3(b)(19) and (20).  Scott's Indiana claim in Count III focuses on her allegation that Monterey persisted in calling her despite "multiple notices to stop calling."  [DE 1 at ¶58.]

Monterey contends that Scott's claim under the Indiana Deceptive Consumer Sales Act is subject to the same arguments that defeat the federal claims under the FDCPA and TCPA, so that summary judgment on Count III is appropriate as well.  Just as the disputes of fact concerning the call history between Scott and Monterey preclude summary judgment on the federal claims, so is summary judgment on Count III precluded.

12

### Motion for Sanctions

Monterey has filed a separate motion seeking dismissal of Scott's complaint as a sanction for violation of Fed.R.Civ.P. 11(b). Monterey contends that Scott's claims "are meritless and lack evidentiary support" because the "few calls that were made within the statute of limitations" are insufficient to support a FDCPA claim and because Scott's consent to receiving calls concerning her debt to Luminess defeats her claim under the TCPA. [DE 20 at 2.] Monterey's sanctions argument essentially repeats its arguments for summary judgment, and presumes the truth of its factual positions, which I have already determined to be genuinely in dispute. The motion for sanctions will be denied.

**ACCORDINGLY:**

Defendant Monterey Financial Services, LLC's Motion for Summary Judgment [DE 16] is DENIED.

Defendant Monterey Financial Services, LLC's Motion for Sanctions [DE 19] is DENIED.

**SO ORDERED**.

ENTERED: January 17, 2018

    /s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**